IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | | |
| | Plaintiff, | Case No. 1:18-cr-512 |
| v. | | Hon. Harry D. Leinenweber |
| EVAN MUSIKANTOW, | | |
| | Defendant. | |

**MEMORANDUM OF NON-PARTY DLA PIPER LLP (US)
IN SUPPORT OF MOTION TO QUASH**

Non-party DLA Piper LLP (US) ("DLA") respectfully moves to quash the third-party subpoena Defendant Evan Musikantow issued to DLA pursuant to Federal Rule of Criminal Procedure 17(c) (the "Subpoena").[1] The Subpoena is improper for several, independent reasons.

*First*, Rule 17(c) "allows only for the gathering of specifically identified documents which [the Defendant] knows to contain relevant evidence to an admissible issue at trial." *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002). The Subpoena disregards this mandate. It does not "identif[y] any "specific[] document[]." *Id.* Instead, the Subpoena resembles a "fishing expedition," impermissibly requiring DLA to comb through a large number of attorney files related to sweeping categories of responsiveness "to see what may turn up." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951).

---

[1] A copy of the Subpoena issued to DLA is attached hereto as Exhibit A.

1

*Second*, and in the same vein, the Subpoena appears to be based on nothing more than speculation that records might exist. The Defendant appears to, at best, "believe" that records might exist, which is insufficient. *See Tokash*, 282 F.3d at 971 (explaining the defendant must "*know[]*" the specific requested records exist). In fact, the Subpoena echoes allegations the Defendant asserted in a prior lawsuit that this Court dismissed for failure to state a claim.

*Third*, the Subpoena's overbroad nature fails to account for the fact that responsive records in attorney files, if any, would undoubtedly risk compelling privileged documents.

*Last*, the Subpoena seeks irrelevant, inadmissible evidence.

For these reasons and the reasons set forth herein, the Court should quash the Subpoena.[2]

## I.    Background

### A.    Summary of the Subpoena and related correspondence.

On or about December 21, 2021, the Defendant served DLA with the Subpoena. The Subpoena contains several broad categories of requested "documents"—the meaning of which fills thirteen lines of possible types of records, *see* Exhibit A at 5-6. It is not limited to any specific time period. The first two categories of requested records are for "[a]ll documents relating to all present or past trusts payments, transfers, distributions and transactions related, referring to, or referencing" either

---

[2] The undersigned counsel is unaware of any prior showing by the Defendant that the Subpoena is enforceable.

of the Defendants' children. *Id.* at 6. The second two categories of requested records are for "[a]ll documents relating to all present and past trust payments, transfers, account legers, distributions and transactions related, referring to, or referencing" either (i) "[the Defendant] as a beneficiary" or (ii) "the funding of trusts for [the Defendant's children] as a [*sic*] beneficiaries." *Id.* The last category of requested records is for:

> All documents relating to payments, transfers and transactions regarding, referencing or mentioning [the Defendant], whether as an individual, jointly with another individual, or in the name of an entity in which [the Defendant] had an interest, or which conduct business on [the Defendant's] behalf or for which [the Defendant] had signatory authority including but not limited to [a list of twenty-one companies] and/or in any entity in which [the Defendant] has or had an interest or which has conduct business on behalf of [the Defendant] or for which [the Defendant] had signatory authority.
>
> The documents are to include, but are not limited to, monthly account statements, account legers and banking records which are to include an itemization of the payments, transfers and transactions copies of all underlying documents.

*Id.* at 6-7.[3]

On or about January 7, 2022, counsel discussed the Subpoena for the first time. Counsel for DLA informed defense counsel that the Subpoena was overbroad and that DLA needed clarification of the requested records. Defense counsel agreed to provide

---

[3] Like the rest of the Subpoena, the meaning of "related to" is also sweeping. It is defined to "include[], but is not limited to, the following: concerning, consists of, refers to, reflects, evidences, displays, memorializes, shows, proves or is in any way legally, logically or factually connected with the matter set forth or referred to or has a tendency to prove or disprove the matter." Exhibit A at 6.

3

DLA with further clarification of the requested records and provided DLA an extension to respond to the Subpoena.

On or about March 11, 2022, counsel conferred for the second time. Defense counsel explained that the Defendant claims DLA was involved in creating, administering, and revoking purported irrevocable trusts for the Defendant's father and for which the Defendant and possibly the Defendant's children were the beneficiaries. Defense counsel further explained the Defendant claims he would have been able to rely on these purported trusts to support his children. Finally, defense counsel clarified that the requests for records were for (1) all records related to the direction of the assets of the purported trusts and (2) all records related to the dissipation of the purported trusts.[4]

On or about March 24, 2022, counsel for DLA sent the Defendant a request to withdraw the Subpoena.[5] Counsel for DLA explained that the Subpoena was improper under Rule 17(c). *See* Exhibit B. Counsel for DLA also explained that compliance with the Subpoena would require DLA to conduct an onerous record review for irrelevant, inadmissible evidence. *See id.* at 2.

On or about April 1, 2022, defense counsel informed counsel for DLA that the Defendant was not going to withdraw the Subpoena. Counsel agreed that DLA would file a motion to quash by April 4, 2022.

---

[4] This clarification of the Subpoena is incorporated into the understanding of the Subpoena and the records requests discussed herein.

[5] A copy of the letter sent to defense counsel by E-mail is attached hereto as Exhibit B.

4

### B. The Defendant's 2019 lawsuit against his father and 2018 conviction for stealing his father's identity.

The Subpoena falls within a history of disputes between the Defendant, his father, and DLA. Most pertinent, the Subpoena tracks the allegations the Defendant asserted in a recently dismissed lawsuit.[6] In 2019, the Defendant sued his father on several state law causes of action in Illinois state court. *See* ECF 1, 1:19-cv-1242 (N.D. Ill.).[7] He also named a now-retired DLA partner, David Glickstein, and another person, Peter Loughman, as "respondents in discovery." *Id.* The Defendant alleged that he and his father made an agreement in which his father would hold and distribute proceeds from the "Musikantow 'Family Business'" that allegedly belonged to the Defendant. *See id.* ¶¶ 8, 11, 15. The Defendant allegedly "allowed [his father] to hold his Ownership Interest in trust," and his father allegedly "led [the Defendant] to believe David Glickstein and Peter Loughman were trustees or agents of the entities created by his father to hold some of [the Defendant's] Ownership Interests." *Id.* ¶¶ 32, 39. According to the Defendant, the reason for the agreement was the Defendant's "fear of the proceeds of his Ownership Interest being consumed by taxes or being taken in his ongoing divorce." *Id.* ¶ 16.

The Defendant's father removed the action to the Northern District of Illinois and successfully moved to dismiss the complaint and the amended complaint. *See*

---

[6] The allegations of this lawsuit, which was filed in 2019, were also a repeat of a 2016 lawsuit the Defendant filed in Cook County, Illinois, that was dismissed for want of prosecution. *See* Jan. 24, 2018 Order, *Musikantow v. Musikantow*, 2016-L-011333 (Cook County) (attached hereto as Exhibit C).

[7] Attached hereto as Exhibit D.

ECF 13-14, 24, 26.[8]  When granting the first motion to dismiss during a hearing, Chief Judge Pallmeyer rhetorically observed the following about the Defendant's alleged motivations to avoid taxes and fees from his divorce:

> [I]s it true that the purpose for the transfer of these assets . . . was to protect the son from efforts on the part of his ex-wife's lawyer to get hold of those assets and/or the IRS? . . . .
>
> [T]o the extent that there appears to be fraud here, it appears to be fraud on the part of [the Defendant (Evan Musikantow)] seeking to shield his assets from legal process.  It's not something this court would ever sanction.

ECF 14 at 3:20-23, 4:12-15.  Chief Judge Pallmeyer entered judgment after granting the second motion to dismiss.  *See* ECF 25.[9]

In addition to this civil suit, the Defendant stole his father's identity.  In 2018, the Defendant pleaded guilty to "taking the identity of" his father in violation of Arizona law.  *See* Exhibit J.  As part of his guilty plea, the Defendant agreed to "pay up to $1,000,000 in restitution to any and all victims including [his father and] DLA" and agreed to "have no contact with the victim." *Id.* at 2.  In late 2019, the Defendant was ordered to pay $32,197.50 to his father.  *See* Exhibit K.

## II.  Argument

### A.  The Subpoena is improperly overbroad and speculative.

The Court may quash a Rule 17(c) subpoena "if compliance would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(2).  The subpoena's proponent "must clear three hurdles" to demonstrate the subpoena is proper: "(1) relevancy; (2)

---

[8] Attached hereto as Exhibits E through H.

[9] Attached hereto as Exhibit I.

6

admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974)[10]; *see also United States v. Bases*, 2021 WL 6621287, at \*1 (N.D. Ill. April 22, 2021) (explaining that it is the proponent's burden to clear these hurdles). This test is applied to subpoenas to parties, as well as non-parties. *See Tokash*, 282 F.3d at 971 (applying test in context of a Rule 17(c) subpoena to non-party); *United States v. Rand*, 835 F.3d 451, 463 (4th Cir. 2016) (adopting the test for Rule 17(c) subpoenas to non-parties); *Bases*, 2021 WL 6621287, at \*3 (same).

The specificity requirement is demanding. Rule 17(c) is not "an additional means of discovery." *Bowman Dairy*, 341 U.S. at 220. It does "not . . . allow criminal defendants to blindly comb through . . . records in a futile effort to find a defense to a criminal charge." *Tokash*, 282 F.3d at 971 (dismissing the defendants' argument that without a "fishing expedition," they could not "establish . . . their proposed . . . defense"). Instead, Rule 17(c) "allows only for the gathering of *specifically identified* documents which a defendant *knows* to contain relevant evidence to an admissible issue at trial." *Id.* (emphasis added).

As a result, courts routinely quash subpoenas that seek, in various fashions, broad categories of records. *See United States v. Reed*, 726 F.2d 570, 577 (9th Cir.

---

[10] The Supreme Court in *Nixon* adopted a "four-part test" for Rule 17(c) subpoenas that it reduced down to these "three hurdles." *Nixon*, 418 U.S. at 699-700. The four-part test requires the proponent to show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* (footnote omitted).

1984) (affirming the district court's quashing of a subpoena that "did not request specific documents, but sought entire arson investigation files"); *United States v. Libby*, 432 F. Supp. 2d 26, 35 (D.D.C. 2006) (finding improper a defendant's request "to examine general categories of documents with the hope that they contain[ed] information that may be helpful to his defense"); *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (explaining that Rule 17(c) subpoenas "seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*").

For instance, this Court recently quashed records requests like those here. In *United States v. Bases*, the defendant sought "all presentations, white papers, briefs, memoranda, or other communications with, or submitted to, the CFTC" by various banks and their employees "regarding spoofing or market manipulation in connection with precious metals trading from January 1, 2007, through December 31, 2014," among other related documents. 2021 WL 6621287, at *2-3. The Court explained that "these requests lack[ed] any specificity" and therefore were "overly burdensome." *Id.* at *3. The Court further observed that the "sweepingly broad" "scope of materials sought" was "suggestive of a fishing expedition forbidden under *Nixon*." *Id.*

In addition, "[a] Rule 17(c) subpoena cannot be supported by mere conjectural assertion as to what the requested material will show." *United States v. Kashmiri*, 2011 WL 1326373, at *4 (N.D. Ill. April 1, 2011); *see also United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) (explaining "mere hope" does not "justif[y]

8

enforcement of a" Rule 17(c) subpoena). In *United States v. Kashmiri*, the defendant sought a broad swath of cables he claimed he could use as exculpatory evidence. 2011 WL 1326373, at *1. Indeed, the defendant argued relevant cables "undoubtedly exist[ed]" based on "his counsel's consultations with an intelligence expert" and "believe[d] in good faith that such cables contain[ed] evidence" that would help with his defense. *Id.* at *5. The Court nonetheless quashed the subpoena. *See id.* "Even read liberally," the Court explained, the defendant's "argument merely speculat[ed] that these cables exist[ed]." *Id.* Thus, the Court concluded the defendant "impermissibly use[d] [Rule 17(c)] subpoenas as discovery tools, and his requests [were] more akin to fishing expeditions than requests for specific documents." *Id.*

The specificity requirement also safeguards privileged information. *See United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006) ("[A] Rule 17(c) subpoena 'should be quashed or modified if it calls for privileged matter.'" (citation omitted)). Of course, if a specific request seeks privileged information, courts quash the subpoena. *See, e.g., In re Subpoenaed Grand Jury Witness*, 171 F.3d 511, 514 (7th Cir. 1999) (quashing a subpoena to testify to information that would break the attorney-client privilege). But courts also quash subpoenas for which "their very lack of specificity not only makes compliance overly burdensome, but also creates a substantial risk that [the] require[d] . . . production of documents" would include privileged records. *See Bases*, 2021 WL 6621287, at *4 (addressing the work-product and deliberative-process privileges).

9

Against this backdrop, the Defendant cannot demonstrate the Subpoena meets the *Nixon* specificity requirement. Far to the contrary, the records requests outlined in the Subpoena and the requests as further clarified are sweeping and unduly burdensome. Just like the subpoenas court routinely quash, the requests here are for records without limit to the types of records or when the records might have been created. *See* Exhibit A; *see also supra* p. 2 & n. 3 (explaining the expansive nature of "documents" and "related to"). The only limit in the requests are the broad categorical descriptions of the type of information the Defendant claims might be relevant to his defense. But as this Court's decision in *Bases* shows, that "limitation" is insufficient. The Court in *Bases* rejected requests for records that sought "all" documents for an eight-year period that might have been responsive to categorical descriptions such as information "regarding spoofing or market manipulation in connection with precious metals trading." 2021 WL 6621287, at *2. Despite the categorical limitation, the Court found the requests were "sweepingly broad," "overly burdensome," and "suggestive of a fishing expedition forbidden under *Nixon*." *Id.* at 3.

Indeed, the "fishing expedition" concern is particularly worrisome here considering the legal history involving the Defendant, his father, and DLA. As explained above, the Subpoena seeks to resuscitate the Defendant's prior, dismissed allegations against his father—this time through an improper use of Rule 17(c).

This tactic is impermissible in any event because the Subpoena fails to "specifically identif[y] documents which [the Defendant] knows" to exist—let alone "knows to contain relevant evidence to an admissible issue at trial." *Tokash*, 282 F.3d

10

at 971. The basis for the requests is, at best, solely the Defendant's claim that purported trust-related records might exist and be in DLA's possession. *See* ECF 93, 1:18-cr-512 (N.D. Ill.) (explaining the Defendant "*believed* that he had fully funded, non-revocable trusts in place to benefit his children" (emphasis added)).[11] Such conjecture is insufficient to command the requested record review. *See Kashmiri*, 2011 WL 1326373, at *4-5; *Cuthbertson*, 630 F.2d at 146. Indeed, in *Kashmiri*, the defendant's counsel consulted "an intelligence expert" that suggested the requested cables "undoubtedly exist[ed]." 2011 WL 1326373, at *5. Yet this Court still found that the defendant's "argument merely speculat[ed] that the[] cables exist[ed]." *Id.* With even less basis to believe the requested records would exist here, the Subpoena cannot be enforced.

Finally, the records requests seek attorney files for which responsive records, if any, would undoubtedly contain privilege concerns. This is further reason to quash the Subpoena. *See Bases*, 2021 WL 6621287, at *4.

For the foregoing reasons, the Court should not require DLA to search through over one-thousand electronic records and an unknown number of physical records stored in dozens of boxes and folders located in several offices—all of which span over two decades. The Rule 17(c) Subpoena is unduly burdensome. It is overbroad, it is

---

[11] Even this is generous. From his dismissed 2019 complaint, the Defendant alleged he was "led . . . to believe David Glickstein and Peter Loughman were trustees or agents of the entities created by [his father] to hold some of [the Defendant's alleged] Ownership Interests" in the "Musikantow 'Family Business.'" ECF 1 ¶¶ 8, 32, 1:19-cv-1242 (N.D. Ill.). Thus, back in 2019, the Defendant apparently was unsure whether David Glickstein was even a "trustee" to the purported "entities" allegedly established by his father for his benefit.

11

based on (at best) speculation, and seeks to invade attorney files. The Subpoena should be quashed.

### B. The Subpoena improperly seeks irrelevant, inadmissible evidence.

The overbroad, speculative nature of the records requests raises two additional, independent reasons to quash the Subpoena. *First*, the Subpoena is so overbroad that it is impossible to determine whether the requests are for relevant and admissible evidence. *See United States v. Hankton*, 2014 WL 688963, at *1 (E.D. La. Feb. 21, 2014) (The defendant's "requests are so vague and overbroad that the Court can only speculate as to the nature of the materials and their relevance."). Because the Defendant fails to "specifically identif[y] [any] documents which [he] knows" exists, he necessarily cannot show that these records also "contain relevant evidence to an admissible issue at trial." *Tokash*, 282 F.3d at 971. The Subpoena is a request for a potential "haystack" (which may include irrelevant or otherwise inadmissible evidence[12]) so the Defendant can "uncover the proverbial needle" he can use at trial. *United States v. Crews*, 2012 WL 93176, at *4 (E.D. Pa. Jan. 12, 2012). Therefore, the Defendant cannot clear the first two *Nixon* hurdles.

*Second*, even if the haystack contained relevant evidence, it is doubtful the evidence would be admissible. The focus of the records requests (the direction of the assets of the purported trusts and the dissipation of the purported trusts) suggests a

---

[12] For example, the requests could include inadmissible hearsay because the definition of "related to" is incredibly broad. *See supra* n. 3. But there is no way to determine this based on the requests.

12

defense that would require a trial-within-a-trial—namely, a mini trial over the disputes he has had with his father in the past, including over previously dismissed claims from a prior lawsuit. But mini trials "divert attention from the [actual] issues the jury will have to decide"—here, whether the Defendant willfully failed to pay child support obligations. *Simmons v. City of Chicago*, 2017 WL 3704844, at *6 (N.D. Ill. Aug. 28, 2017). For this reason, the Seventh Circuit has emphasized that trials-within-trials should be avoided. *See Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998). The Court would be well within its discretion to bar a mini trial here, given the claims were dismissed by the Court before and the Defendant's and his father's previous disputes are so far afield of the criminal allegations against the Defendant. *See* Fed. R. Evid. 403.

### III. Conclusion

For the above reasons, the Court should quash the Subpoena. Because it is overbroad and unduly burdensome, "[c]ompliance would be unreasonable [and] oppressive." Fed. R. Crim. P. 17(c)(2).

Dated: April 4, 2022                    Respectfully submitted,


                                        *Matt Hiller*
                                        Matt Hiller (IL-6277662)
                                        Robert Muttilainen (IL-6333123)
                                        DLA Piper LLP (US)
                                        444 W. Lake Street, Suite 900
                                        Chicago, IL 60606
                                        (312) 368-4000
                                        matt.hiller@dlapiper.com
                                        robert.muttilainen@dlapiper.com

                                        *Counsel for DLA Piper LLP (US)*